I know that diversity cases rank high on the disfavored list, but this is an important case that the highly aggrieved plaintiffs seek to hold accountable a news organization for a false light invasion of their privacy, and that attempt was batted away by the district court on two completely erroneous bases. There are 33 states that recognize the false light invasion of privacy. Nebraska is one. South Dakota does not. Missouri, we believe, does because a court of appeals has recognized it, and the Missouri Supreme Court and Smith recognized it under the white circumstances. It would acknowledge the existence of a flip cause of action. And all the states acknowledge defamation claims, and the 33 states that have flip claims distinguish between the two because defamation requires allegations and proof of loss of reputation. And in a flip claim, there is no claim for loss of reputation. Instead, the damages are personal and internal, not reputational. Well, let me just jump right in. So the Missouri Court of Appeals held, and I think you rely on this case, that there is a false light claim. They recognize it, but they also said you need actual malice. And the problem I'm having, just to be real frank with your claim, is even assuming it exists, you know, I watched the video several times to try to figure out what was going on. It's completely truthful. There is that banner. There is that banner that may be suggestive, but if you are listening to that video with the audio on, I don't know how you could make the point that they have shown actual malice. It is a truthful, responsible piece of journalism for the most part, with the exception of that banner. Right, right. Myer Court says actual malice. The Supreme Court has not resolved that question. Kansas, Nebraska, Illinois require the malice to be satisfied by recklessness. And we, in fact, we pled, all three, we pled malice and reckless disregard. Now it's not in the record here, but while the motion to dismiss was pending, we did a 30B6 deposition to find out what happened, to find out why this occurred. And there because there were directors, a director, there was a person who had quality control responsibility over the reporter's video. They all had an obligation to do timing, that there was an automated system in which the story banner would appear or disappear. And somebody had the duty to check to make sure that that button had been pushed. But why is it not? So it's reckless. So certainly we have evidence of recklessness. But why isn't most that to me would suggest negligence, but why isn't that overcome by the voiceover? The voiceover, as I recall, says your client was part of a theft of a videographer, excuse me, wedding photo business where she never received the services received. And it's very clear from that, that her participation in that video was not part of the sex for pay. Right, right. And then it says for 43 seconds, it says man accused of tricking women into sex over her picture. And whether or not they can be imputed to each other is a question of fact for a jury to decide whether or not under these circumstances there was recklessness in putting this together with the danger that the implication would be that this was one of the women having previously been defrauded by this guy. Well let me ask you, let me ask you this. She's now been tricked into sex. There's cases like this where you have a banner and no voiceover. Okay, so you have a banner that says something and it leads to a false light, a false impression. But there's no voiceover telling the truth. Is there a single case you where there's anywhere in the country where there's a false light claim that's recognized, where you have a voiceover that's truthful, but a banner that may mislead? I don't believe so, but it's not material. Because unless the voiceover says this is not one of those women, it does not erase the implication. And that's a fact question for a jury. That would be a defense you would argue to the jury that you cannot make this jump and add the implication to it. Because it was not clarified, it wasn't there. Instead it clearly says here's this woman, here's her image, and it says woman tricked into sex. That should be sufficient to go to a jury to decide whether there was a sufficient degree of recklessness, which we pled to meet the malice standard, and whether or not the statement was a false light that damaged her. That's actually a damaged question, I believe. Let me ask you one other question. I'm going to change subjects a little bit here. At the end of the brief, or maybe it was in the beginning, I can't remember, you preserve the issue of the amendment to the pleadings for purposes of remand. That actually, quite honestly, may be one of your strongest arguments. Because you replace the Jane Doe and John Doe defendants with named people who destroy diversity. And I think it's a problem that the district court just basically bypassed that and decided to claim a first impression under Missouri law itself. We did. Because in a case that's immaterial, a month ago Justice Thomas in the California franchise tax case said that these kinds of questions of state law are essential attributes of sovereignty and that they should be decided by the state court. And that's the question, does recklessness meet malice? That's a state court question. But with no disclaimer separating the two, is that sufficient causation? These are all state law questions which Judge Gaetan should have exercised in order to recognize the comedy issues of this. Should we decide that though, or should we? No, I believe you should recognize first that it was error to say that this was defamation because it's clearly not. And secondly, it was error for him to say that Missouri does not recognize flip cases because Missouri does under the right circumstances. And then you should remand it back to him. And if I were you, which I'm not, I would say that the court should give serious consideration to whether or not it should exercise its clear discretion to grant the amendments and let the state courts resolve these issues because these, as Justice Thomas said, are clearly attributes of sovereignty that should be decided by the state courts. So I will reserve my remaining time. May it please the court, I'm Bernard Rhodes. I represent the television station. I have seven reasons why Judge Gaetan was right. Their names are Sullivan, Nazeri, Farrow, Smith, Cochram, and Cousins. Oh, and then there's Gutierrez. The first six are the plaintiffs who've come before the Herons and have failed time after time after time to get either the to agree that there's a claim for false flight, where there's a false statement of fact that injures their reputation, or the last two are the plaintiffs who came before this court and failed to make that claim. The seventh name, Gutierrez, however, may be the most critical. Andres Gutierrez. He's the reporter who said this all allegedly happened as Antoine was on legal troubles as a wedding photographer. In 2012, the Missouri Attorney General charged Antoine for ripping off a half dozen brides, including Shilina Heron. Judge Strauss, as you said, it couldn't have been more plain what the photo was of Shilina and Corrine Heron because Andres Gutierrez said on the air, in those words, this is why you were about to see this woman's picture, just like I said, may it please the court. My name is Bernard Rhodes and I represent the TV station because you then knew that everything I said after that was the TV station's position. And any reasonable viewer knew after hearing Mr. Gutierrez voice those words, that what you were about to see was Shilina Heron. And that's exactly what happened. So first of all, even if we ignore the first six reasons, the six cases which have rejected false light, it's not false light. It's not false. It's 100% true. There is no allegation whatsoever in the complaint that Shilina Heron didn't get ripped off by this photographer. There's absolutely no allegation in the complaint that Ms. Heron didn't consent to interview by this TV station. In fact, it expressly says she consented to the interview. But even if it was somehow false, it can no way be actual malice. Well, let me ask you this. I mean, maybe it's not actual in your view, but that was it was not great to leave that banner up. You're 100% down or you put a different banner. Oh, and this guy was also convicted of theft and, you know, something like that. You couldn't be more correct, Your Honor. And in fact, what's fascinating is the plaintiff's counsel took the deposition, as he said, of the Rule 30b-6 witness before he had filed his motion for leave to amend. And he learned, it's not in the record, but he and I both agree, the testimony was it was a mistake that the banner that said man convicted was supposed to come down when you saw Shilina Heron and a new banner was supposed to go up that said wedding photographer victim. But we all make mistakes. And the mistake was the person who the time at which that new banner was supposed to go up. And so if you've ever been in a TV control room, it's organized chaos. So there's a bunch of people in the control room, one of whose job, the only job this person has is to change banners. That's the only job they have. The testimony of the 30b-6 was because the person who's supposed to change the banner wasn't told what time, she didn't know wedding victim comes up when. And by the time she realized it, the wedding victim was already off the screen. So when the mistake was made, I mean, I understand the mistake doesn't rise to the level of actual mouse. I get that. Yes. But then she calls and says, please take this down. Now you take it down from the KSHB website, but it stays on the YouTube and Facebook page. That could be reckless disregard of a risk. No, no, it can't because the reckless disregard because it's not reckless. It's reckless disregard of the truth at a time you have substantial doubt. Yes, it might be simple common law negligence. It might even be simple common law recklessness to realize that it was on the website, but it was also on the YouTube channel. But it's not actual malice recklessness, which this court and the Missouri Supreme Court and every other Missouri court that's addressed the issue has explained is not common law malice. It's you knew it was false or you acted with reckless disregard at a time. And that's the something that happened later doesn't prove that at the time it was negligent. So, yes, it was a mistake. When I was first hired, the first thing I did is I is I called plaintiff's lawyers up and I apologized. And I said, please pass the apology on to the hearings, because it was a mistake. And it was clearly negligence for whoever typed in those that banner to not type in the instructions as to when to post the banner. But the fascinating thing is Mr. Benson knew every one of those facts when he pled his amended complaint and he chose not to put them in because he knows that's not actual malice. That's why he's not appealed. This is critical. He has not appealed the decision of Judge Gaitan to find that the motion to amend was futile. That's the basis that the judge grant denied the motion to amend, not because of some federalism or some comedy issue, but because it was futile, because even after having taken a 30B6 deposition and knowing the factual basis for how the banner did not get changed. Well, there were mistakes there made by the district court. It may not it may not change the result. But I mean, the district court said, well, there's there's no false light cause of action. And our case law suggests that when the Supreme Court has not clearly said so, we look to the Missouri Court of Appeals. And there is a Missouri Court of Appeals that says there's a false light action. With all disrespect on this one, I disagree with you. And I agree with Judge Grunder. In the Cochram decision, Judge Grunder, I think, was very prescient. In the Cochram decision, he only had two of those first six reasons. He only had Sullivan and Nazari to go by. He didn't later have Pharaoh Smith. But what he wrote was the allegedly false statements at issue in Sullivan and Nazari are similar to the statements at issue here in that they could lead people to believe that the respective plaintiffs had serious professional and personal faults. That's exactly what the allegation here is. The allegation verbatim out of the complaint, page 13 of the appendix, paragraph 43. I'm now paraphrasing. The broadcast could lead people to believe, those are my words from Judge Grunder, quote, that Shailena had been tricked into on-camera sex, that she'd either cheated on Corey or had sex with Antoine with his knowledge, his being Corey's knowledge and approval, or that she engaged in sex with Antoine to become a porn star, or that she had simply engaged in sex with Antoine for money. That is exactly what Judge Grunder said is not false light. Where the statements at issue could lead people to believe that the respective plaintiffs had serious professional and personal faults. When you're married and you sleep with somebody for money, that's a serious personal fault. I think it's more than serious. If you're saying that they're sleeping with somebody for money and they're doing it for pay and becoming a porn star, that's pretty serious stuff. That's why it's defamation. But I don't know a single court who's recognized false light absent this actual malice issue that say that is not false light defamation. Missouri. Missouri would be the place because the only place, Meyer Court is, Meyer Court. I think you're overreaching, counsel. Well, see, I think Judge Wollman had it right in Cousins when he said, quote, whatever the fact-based holding of Meyer Court is. And I don't even know and understand what Meyer Court is. The difference, though, in Meyer Court, there wasn't a statement. You go back to Judge Grunder. Again, this is before Meyer Court. Again, he's pressured. He sees what's going to happen. The allegedly false statements at issue in Sullivan and Nazeri are similar to the statements at issue here. There was no statement in Meyer Court. There was this truly bizarre, only in America can you make up these facts, that Mr. Meyer Court was listed as the registrar of a website and then he left the company and then the website was later used in a guerrilla marketing campaign, which when first light was involved, we didn't even know what a guerrilla marketing campaign was and he somehow got falsely associated with it. That's not what Judge Grunder says in Cochram is a statement at issue here. There was no statement. Zipitani didn't say anything. Nothing. There was no statement. So with all due respect, I don't think I'm overreaching. I think where you make a false statement, look at Smith. I argued that case on the Missouri Supreme Court most recently, the Humane Society. There they showed a picture of a sick dog. The court said, that's not false light because the application was, well, that means you're a puppy mill. That was a defamation case. They lost on defamation because of his opinion. But with all due respect, I agree with Smith. Thank you, Your Honor. Very well. Thank you, Mr. Rhodes. With respect to the six names or cases, Mr. Rhodes said that there's no cause of actions where the injury is to their reputation. And he's right. This is not a claim to reputation. He says he will rely on Smith. We will rely on Smith. Let me just actually read very briefly from Smith, quoting Sullivan. It may be possible that in the future, Missouri courts presented with the appropriate case, da, da, da, da, will recognize them. And in this case, and in Smith, it says a claim for false light of invasion of privacy is properly dismissed if recovery should be in defamation. But this is not a defamation case because there's no claim to reputation. It was carefully pled to avoid that. The other things are facts. Whether it says man charged with tricking woman into sex above the Chalina Heron, whether or not that is a statement as claimed, it certainly sounds like a statement in our modern era now where you have her picture and man charged with tricking women into sex. That sounds like a statement to me. But at a motion to dismiss, we're entitled to the inferences. And that becomes a question of fact later. And whether or not the mistakes become reckless, not only was there a director who's supposed to put the time stamp in, there's somebody who's supposed to check the director. Whether or not this recklessness is sufficient that we can prove, we've pled it. It didn't just happen accidentally. Whether we can prove it is a fact question that we ought to get into and all of this should be done in state court. And I will give up my last 40 seconds. Thank you. And I appreciate your patience on a long day, especially ending it with a diversity case. Thank you. Thank you, Mr. Benson. Thanks to both counsel. We appreciate your appearance today. The case is submitted and we will decide.